IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | 1:20-CR-65 |
| | ) | |
| MAURICE ANTWAIN DIGGS | ) | |

**Sentencing Memorandum**

The Defendant, Maurice Antwain Diggs ("Mr. Diggs"), by and through his undersigned attorney, respectfully submits his Sentencing Memorandum for this Honorable Court's consideration. Mr. Diggs requests this Court review the circumstances of his case pursuant to 18 U.S.C. § 3553, and impose a downward variance from the guideline range established by the U.S. Sentencing Commission. *Gall v. United States*, 128 S. Ct. 586, 600 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007); *Rita v. United States*, 127 S. Ct. 2456 (2007). In support, Mr. Diggs states that the Court should consider:

1. The career-offender guideline, although applicable in this case, will produce an unreasonable sentencing range;

2. Mr. Diggs had a disadvantaged childhood, has experienced trauma, and abused substances to cope with the misfortunes of his life;

3. Mr. Diggs suffers from medical, mental, and emotional conditions; and

4. Staff at the Jefferson County Jail emotionally abused Mr. Diggs and caused him physical harm.

**Memorandum of Law in Support of a Downward Variance**

Introduction

The departure authority within the Guidelines Manual provides a preliminary basis for sentences below the Guidelines, but neither counsel nor the Court fulfills their obligations by considering departures alone. Counsel must show, and the District Court must consider, all reasons why a Guideline sentence "fails to properly reflect Section 3553(a) considerations, or perhaps [that] the case warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456 at 2456 (2007). The District Court cannot presume that the Guidelines range applies to any particular case. *Id*. Counsel's duty extends to challenging the imposition of a Guidelines range sentence by all arguments available, including Guidelines departure. There is essentially no limit on the potential factors that may warrant a departure or non-Guidelines sentence.

Sentencing Pursuant to *Booker*

In *United States v. Booker*, the Supreme Court held that provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory (18 U.S.C. §3553(b)(1)), or which rely upon the Guidelines' mandatory nature (18 U.S.C. § 3742 (e)), conflicted with the Sixth Amendment (U.S. Const. Amend. VI). 125 S. Ct. 738, 756 (2005). Accordingly, the Court severed and excised the mandatory provisions, "mak[ing] the Guidelines effectively advisory." *Id.* at 757.

Instead of binding a sentencing court, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges. *See* 18 U.S.C. §3553(a)(4). It also permits the Court to tailor the sentence in light of other statutory concerns as well. *See* 18 U.S.C. 3553(a); *Booker* at 757. According to *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in Section 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§3553(a)(1));

2) "the kinds of sentences available" (3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have found guilty of similar conduct" (§3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§3553 (a)(7)).

In addition to considering the factors set forth in Section 3553(a), the court shall recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation. 18 U.S.C. §3582. "No limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). 18 U.S.C. 3661.

**The Career-Offender Guideline, Although Applicable in the Instant Case, Will Produce an Unreasonable Sentencing Range.**

The district court has the authority to determine if a sentence outside the applicable sentencing range is "sufficient, but not greater than necessary, to comply with the purposes outlined in §3553(a)(2)." 18 U.S.C. §3553(a).  Should a court "impose a sentence that is outside the guidelines framework, such a sentence is considered a 'variance'." *U.S.S.G. §1B1.1 Background Note* quoting *Irizarry v. United States*, 553 U.S. 708, 709 -16. To support the variance a district court must (1) "correctly calculate the guidelines range," (2) "consider the extent of the deviation," and (3) "ensure that the justification is sufficiently compelling to support the degree of the variance." *U.S. v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). A sentence of 120 months of imprisonment was upheld, despite the guideline range of 188 to 235 months imprisonment, "due to the 'extreme' circumstances of the [defendant's] upbringing." *United States v. Stoyle, D.C. Docket No. 1:18-cr-00036-WLS-TQL-1, pg. 5* (11th Cir. 2020). The 68 months downward variance was based upon the court's reliance on the defendant's "prior conduct"[,] "the reality of [his] situation"[,] and the defendant's "opportunity to get treatment and education." *Id.*

Mr. Diggs was arrested on October 9, 2020, pursuant to a warrant issued for the Superseding Indictment. PSR, Part A, ¶ 4, page 4.  He has been incarcerated for more than 2 years and had adequate time to reflect on the offenses he pled guilty. At 43 years of age Mr. Diggs is deeply remorseful and sober.  For the first time since the age of 7 Mr. Diggs is alcohol and free of illegal drug use. PSR, Part B, ¶ 67, page 18.

A longer sentence is not necessary to satisfy the purposes of sentencing in Mr. Diggs' case. "Based upon a total offense level of 29 and a criminal history category of VI, the guideline

imprisonment range is 151 to 188 months." PSR, Part C, ¶76, page 20. Mr. Diggs' respectfully requests that this Court sentence him to a term of 87 months in prison followed by three years of supervised release. A period of 87 months of incarceration with credit given for time served is a 68 months downward variance that is comparable to the *Stoyle* case. Said sentence would be sufficient, but not greater than necessary, to comply with the purposes listed in 3553(a)(2) and reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, adequately deter criminal conduct, and protect the public from future criminal conduct.

The likelihood that Mr. Diggs will recidivate decreases with age. Should the Court sentence Mr. Diggs to 87 months, he will be approximately 50 years of age upon his release from the Bureau of Prisons.

> "There is a wealth of information and data that shows prison inmates age faster than similarly situated counterparts on the outside. Increased levels of stress, poor diet, and a lack of sufficient medical care has led to institutions qualifying inmates as 'elderly' at the age of 50. We also know that as prisoners age, there is a tendency to "age-out" of crime. Prisoners who are at least 50 years old have a 15% re-arrest rate, compared to a 41% recidivism rate for all federal prisoners." The American Conservative Union Foundation Nolan Center for Justice: Elderly in Prison and Compassionate Release. See **https://conservativejusticereform.org/issue/elderly-in-prison-and-compassionate release/**

**Mr. Diggs had a Disadvantaged Childhood, has Experienced Trauma, and Abused Substances to Cope with the Misfortunes of His Life.**

The Sentencing Guidelines treat lack of guidance as a youth and "circumstances indicating a disadvantaged upbringing" as forbidden departure grounds. U.S.S.G. §§5H1.12 and 5K2.0(d)(1). *Booker*, 125 S. Ct. at 757, and its progeny free district courts to consider these factors as part of their analysis under Section 3553(a).

Federal courts grant variances after considering the personal history of defendants. In *USA v. McKennie (*D.C. Docket Nos. 0:21-cr-60275-WPD-1, 0:18-cr-60277-WJZ-1, pages 2-3), the

district court gave consideration to the defendant's mental health and sentenced him to a below-Guidelines sentence. Similarly, the district court in *USA v. Baronville* (D.C. Docket No. 0:08-cr-60151-WJZ-1, pages 1-3) "concluded that a downward variance was warranted in light of the 18 U.S.C. §3553(a) factors," "varied downward by 27% from the low-end of the advisory range," and sentenced the defendant to 192 months, despite the guideline range of 262 to 327 months' imprisonment.

In this case, Mr. Diggs' parents separated after a six-year relationship and he and his siblings were primarily raised by a single mother "under lower income conditions in Aiken, South Carolina." PSR, Part C, ¶ 56, page 16. Mr. Diggs and his "family spent time in a homeless shelter, received welfare benefits, and sporadically experienced a lack of electricity." *Id.* During his formative years Mr. Diggs had "limited contact with his father" and his mother unexpectedly passed away when Mr. Diggs was 39 years of age. *Id.* at ¶¶ 55 and 57. Her untimely death was devastating to Mr. Diggs and sent him into a swirling spiral of daily substance abuse that included alcohol, opiates, and methamphetamine.

> Mr. Diggs' sister, Marquie Martinez, states in her character letter dated November 1, 2022, "20 years ago he lost his childhood friend of 10 years in a horrible car accident. That particular loss trickled down into an array of lifestyle changes that resulted in mental issues, depression, neglect, family abandonment and other issues. Fast-forward to 2018, he lost his mother to heart failure (she was fairly young, only 58). The abovementioned lifestyle changes were only magnified and led him to a life of drugs and crime. He explained to me that he felt hopeless and lost focus of life altogether. This resulted in him living a very unhealthy lifestyle that he deeply regrets. Maurice

was raised by our praying mother, attentive uncles and father. Unfortunately, this thing called life led him into some phases of life in which he regrets."

The trauma that Mr. Diggs endured from the death of his childhood best friend and his mother's untimely death led to his consistent abuse of substances for 34 years. The substance abuse increased over time and became more dire as he grew older. He first used alcohol at the age of seven. PSR, Part C, ¶ 67, page 18. Mr. Diggs "described himself as a binge drinker, recalling he would work Monday through Friday, and then drink excessively over the weekend, to the point of passing out/blacking out. Forensic Evaluation - Competency, U.S. Dept. of Justice, FBP, FDC, Englewood, CO, page 3 (July 14, 2022). Mr. Diggs began abusing marihuana at the age of 12, cocaine (powder) at the age of 24, ecstasy at the age of 28, methamphetamine at the age of 34, and heroin, oxycodone, and mushrooms at the age of 38. Mr. Diggs continued to abuse substances until the age of 41 and his arrest in October 2020. Mr. Diggs advised that "he is currently in need of substance abuse treatment and requested treatment as part of his sentencing conditions." PSR, Part C, ¶¶ 67- 68, page 18.

### Mr. Diggs Suffers from Medical, Mental, and Emotional Conditions

Mr. Diggs has several medical conditions. These conditions include Obstructive Sleep Apnea that requires daily use of a continuous positive airway pressure (CPAP) machine, heart palpitations, Hypertension, Type 2 Diabetes, Obesity (weighs 320 lbs.), a hernia issue, and chronic arm, back, and shoulder pain. PSR, Part C, ¶¶ 59 and 60, pages 16 - 17. Mr. Diggs was denied a CPAP machine specifically diagnosed to combat his Obstructive Sleep Apnea. Rather staff at the Jefferson County Jail gave Mr. Diggs a non-prescribed positive airway pressure (PAP machine) that a former inmate happened to leave behind at the Jefferson County Jail. The machine was later lost when Mr. Diggs

traveled from the Federal Detention Center in Englewood, CO, to the Jefferson County Jail. Since July of 2022, Mr. Diggs has been without a PAP machine. Mr. Diggs is unable to safely sleep at night. If he sleeps, Mr. Diggs wakes up choking and in great distress. His cell mates have found him lying on the floor during the night and have had to help him get back on his bunk.

      Mr. Diggs also has several mental and emotional conditions. In 2009 Mr. Diggs attempted suicide by pulling the trigger on a firearm that happened to misfire and sought mental treatment at a mental health facility in Fayetteville, NC. Forensic Evaluation - Competency, U.S. Dept. of Justice, FBP, FDC, Englewood, CO, page 4 (July 14, 2022). In 2010 Mr. Diggs was diagnosed with paranoid schizophrenia. Over the course of several years, Mr. Diggs received inpatient and outpatient mental health treatment at several area facilities, including, but not limited to Aiken Regional Medical Center (ARMC) located in Aiken, SC, Aurora Pavilion located in Aiken, SC, and Serenity Behavioral Health Services (SBHS) located in Augusta, GA. On June 26, 2015, Mr. Diggs entered inpatient mental health treatment at Serenity Behavioral Health Services and was diagnosed with episodic mood disorder, alcohol dependence and cocaine abuse. Mr. Diggs was discharged 10 days later on July 3, 2015. He entered inpatient mental health treatment approximately 44 days later on August 17, 2015, at Aiken Regional Medical Center (ARMC) because he was experiencing symptoms of depression with suicidal ideation. He remained a patient of Aiken Regional Medical Center (ARMC) for four days. PSR, Part C, ¶¶ 62 - 64, page 17.

      Per order of the U.S. Magistrate Court Mr. Diggs underwent a medical and psychiatric evaluation at the Federal Detention Center in Littleton, Colorado, between May 3, 2022, and June 17, 2022. *Id.* at ¶ 65, page 17. Evaluation findings of the Forensic Evaluation - Competency conclude that Mr. Diggs has (1) Posttraumatic Stress Disorder (Provisional) "based on his reported

history of physical/emotional abuse as a child.", (2) Adjustment Disorder with Anxiety, and (3) Substance Use Disorder (Stimulants, Opioids), Moderate, In Remission/Controlled Environment. Forensic Evaluation - Competency, U.S. Dept. of Justice, FBP, FDC, Englewood, CO, page 6 (July 14, 2022).

Mr. Diggs is the product of a here one day, gone the next "father [that] ... struggled with drug use in the past" and a mother that "struggled with substance use when she was younger " until Mr. Diggs reached the age of 13. His mother also "punished him physically as a child." Mr. Diggs "got beat, she didn't spare the rod." In fact, Mr. Diggs "noted his parents' punishments were excessive when he was a child." *Id.* at pages 2 - 3, 6, 9 -10.  (July 14, 2022). "Mr. Diggs indicated his trauma-related concerns are due primarily to the excessive discipline he received as a child." *Id.* at page 4. "It was reported that [Mr. Diggs] would likely benefit from further therapy to address symptoms and personality features". PSR, Part C, ¶ 65, pages 17 - 18. An 87 month sentence will  provide Mr. Diggs with needed medical care and other correctional treatment in the most effective manner to adequately address his medical, mental, and emotional conditions.

**Staff at the Jefferson County Jail Emotionally Abused**

**Mr. Diggs and Caused him Physical Harm.**

On a date that Mr. Diggs had a scheduled hearing before U.S. Magistrate Court Judge Brian K. Epps, correction officers from the Jefferson County Jail were tasked to transport Mr. Diggs from the Jefferson County Jail to the U. S. District Court (Augusta).  Mr. Diggs awoke the morning of the hearing, was not feeling well, and notified the jail staff that he was experiencing chest pains and labored breathing.  Mr. Diggs inquired of the jail staff if the scheduled hearing could possibly be continued because he was not feeling well.  Mr. Diggs asserts that the jail staff disregarded his

medical well being, behaved with aggression, and treated him with a lack of professionalism. Mr. Diggs was yelled at and threatened with the use of a taser. The jail staff placed their hands on Mr. Diggs's arms and legs rendering him without control of himself and aggressively pulled his 320 pound body from the top bed bunk, out of his cell, and down a flight of 15 steps. As a result Mr. Diggs experienced chronic pain in his arms, back, and shoulders. The pain is continuous on a daily basis and he is not afforded pain medication beyond a Tylenol by the Jefferson County Jail.

 Mr. Diggs is subjected to additional physical abuse because he is denied a CPAP machine specific to his sleep apnea diagnosis. Mr. Diggs' physical and mental health have deteriorated while in custody at the Jefferson County Jail due to denied medical services and if he does receive medical services they are subpar and inadequate.

 Mr. Diggs has also suffered emotional abuse. The staff at Jefferson County Jail insulted Mr. Diggs with derogatory slurs on a daily basis. He has been called the n-word by staff members Robert Kelly and Nurse Lynn. Fed up with the personal insults and ill treatment, Mr. Diggs has yelled profane words at the Jefferson County Jail staff. Mr. Diggs has since apologized to Nurse Rachel and asked her to forgive him for his unruly behavior.

 Mr. Diggs does not make any excuses for his inappropriate behavior toward the Jefferson County Jail staff. Mr. Diggs was prescribed Zoloft by Forensic Psychologist Jeremiah Dwyer, Ph.D. while in custody at the Federal Detention Center located in Englewood, Colorado. As a result Mr. Diggs behavior has been less confrontational and his demeanor is more pleasant since he returned to the Jefferson County Jail.

 We respectfully request that the Court considers a sentence that both reflects the seriousness of the offense committed, and promotes respect for the law, but provides a just punishment that gives

consideration to Mr. Digg's ongoing medical, mental, and emotional conditions.

**WHEREFORE** the Defendant, Maurice Antwain Diggs, prays this Court will grant the relief sought herein, and grant a variance downward pursuant to §3553(a) to 87 months, and sentence Mr. Diggs to a term of incarceration that is just.

Dated this 5th day of December, 2022.

                                      Respectfully submitted,

                                      Arthur L. Walker and Associates, LLC

By:   s/Michon Walker
        Michon Walker, Attorney for Defendant
        Georgia Bar No: 732413
        P.O. Box 64
        Sandersville, GA 31082
        478-552-0552
        mwalker@arthurlwalker.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | 1:20-CR-65 |
| | ) | |
| | ) | |
| MAURICE ANTWAIN DIGGS | ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the true and correct copy of the foregoing I hereby certify that on December 5, 2022, a true and correct copy of the above and foregoing Sentencing Memorandum was forwarded to all counsel of record via Notice of Electronic filing.

                                                    Respectfully submitted,

                                                    Arthur L. Walker and Associates, LLC

By:    s/Michon Walker
           Michon Walker, Attorney for Defendant
           Georgia Bar No: 732413
           P.O. Box 64
           Sandersville, GA 31082
           478-552-0552
           mwalker@arthurlwalker.com